Leonard H. Sandler, J.
The plaintiff, a mailman delivering mail to the defendants’ home, was bitten on a hand by one of defendants’ two dogs, boxers of considerable size.
While approaching the house, the plaintiff (recently assigned to the route) heard the growling of dogs. Suddenly, the front door came open and the two dogs emerged, barking furiously and advancing toward the plaintiff in an apparently menacing way.
Understandably believing himself in danger, the plaintiff thrust his mailbag at the nearer of the approaching dogs who thereupon bit him on the hand, causing the injuries complained of in this action.
Although the evidence does not disclose that either of the dogs had previously bitten anyone, it does establish that similar forays by the dogs had appeared menacing over a period of time to a previous mailman. He testified that the same dogs, running loose, had repeatedly advanced towards him, barking furiously and causing him to retreat each time to the protection of his vehicle. A time came when he had refused to make mail deliveries to the house, and caused a letter to be sent from the post office to the defendants, advising them of the situation.
One of the defendants testified that the dogs were quite gentle in disposition, had not bitten anyone previously, and were provoked to attack the plaintiff by his act of throwing the mailbag at them. She acknowledged that one of the dogs had learned how to open the front door, and had done so from time to time, enabling both dogs to go outside.
After a review of all the evidence, I find that plaintiff’s injury was sustained as the result of the defendants’ negligence. In the absence of proof of loss of wages or medical expenses, the recovery must be limited to pain and suffering, damages for which I fix at $1,000.
The facts of this case suggest that a useful purpose would be served by a fresh analysis of the two quite separate bases of liability for owners of domestic animals which injure others.
The first source of liability, and the one which has been most *90 productive of judicial discussion, involves a form of strict liability. It ivas decided quite early in this State in the leading case of Muller v. McKesson (73 N. Y. 195 [1878]) that the owner of a vicious dog, which the owner knows or should know to be vicious, is answerable in damages for injuries inflicted by the animal. After discussing a number of older cases, primarily English, and analyzing the different conceptual theories that had been advanced for the rule, the Court of Appeals concluded that the £ £ gravamen is the keeping the ferocious animal, knowing its propensities.’ ” (See Muller v. McKesson, supra, p. 200.) Obviously, the court was of the view that the innocent victim of such an attack should not be required to prove in what particulars the owner had failed in his duty of care.
A high proportion of later cases in this area was concerned with determining what facts would justify an inference of knowledge of the ££ vicious ” propensity by the owner. Contrary to a widespread illusion, it appears never to have been the law in this State that the liability of the owner hinged on his knowing that the animal had previously bitten someone or had inflicted some other kind of injury. (Perrotta v. Picciano, 186 App. Div. 781 [1st Dept., 1919].)
Indeed, the cases disclose an increasing tendency to find that, where an animal in fact acted viciously, only slight evidence is required to support a finding that the owner knew or should have known of that propensity. (See Perrotta v. Picciano, supra, and eases discussed.)
A second group of cases has been concerned with defining the meaning of £ 1 vicious ’ ’ in the governing rule of law. It is now clear that the term is not limited to malicious behavior but includes a 11 propensity or tendency to do any act which is dangerous to the person or property of another, whether actuated by malice or otherwise.” (3 C. J. S., Animals, § 148, subd. c ; see Shain v. Crausman, 3 N Y 2d 764 [1957] ; Lagoda v. Dorr, 28 A D 2d 208 [3d Dept., 1967] ; Prosser, Torts [3d ed.], p. 515).
As Prosser commented, at page 515: “ A known tendency to attack others, even in playfulness, as in the case of the overly friendly large dog with a propensity for enthusiastic jumping up on visitors, will be enough to make the defendant liable for damages resulting from such an act.”
I am inclined to think that the availability of strict liability in this area, and the advantages it confers upon plaintiffs, tended to obscure the fact that the owner of a domestic animal may be liable in particular circumstances under traditional negligence *91 principles. (See Kennet v. Sossnitz, 260 App. Div. 759 [1st Dept., 1940].)
In any event it is now the law in New York, as it is generally, that the owner of a domestic animal may be liable for negligence when his animal inflicts injury on another. (Shain v. Crausman, supra ; Steubing v. Hooper, 272 App. Div. 865 [4th Dept., 1947] ; Russo v. Schieber, 11 Misc 2d 842, affd. 8 A D 2d 986 [2d Dept., 1959], mot. for lv. to app. den. 9 A D 2d 629 ; 3 C. J. S., Animals, §§ 145, 146 ; cf. Bruni v. Collis, 17 N Y 2d 707 [1966].)
A persuasive argument can be made that the facts as found here would justify a finding against the defendants under the rules of strict liability. In view of the evolution of the term “ vicious ” to include a playful propensity that can injure others, I would think that the established prior behaviour of the dogs here might well bring them within the legal definition of the term.
I do not decide that question here since it seems to me clear that the defendants here are in any event liable for negligence. Knowing of the tendency of the dogs described above, the defendants should surely have foreseen that someone, reasonably feeling himself under attack, might make a gesture of defense that would provoke an actual attack. The utter failure of the defendants to take precautions against an event sa readily foreseeable was surely a violation of the standard of care that was required of them under the circumstances.
I also believe that the facts of this case present just one instance of a problem of increasing importance in the lives of many people living in the crowded intimacy of our city. We are all aware of the deep satisfaction and pleasure many derive from the companionship of dogs. And yet it is equally obvious that the presence of dogs in large numbers in apartment houses, streets, playgrounds and parks is in varying degrees a source of discomfort, anxiety and sometimes terror to many others. The working out of civilized rules of behavior, sensitive to the legitimate rights of all, seems to me a pressing, long overdue societal need.
Many of the problems are not easy to solve, but it is surely not too much to expect that owners of dogs, particularly large ones, should understand, however gentle the dog may in fact be, that it has a capacity for alarming others that imposes upon the owner a duty of vigilance and care.
Judgment is to be entered for the plaintiff in the amount of $1,000.